**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

STEPHEN PENNYMAN,                   :          Case No. 3:26-CV-00147 (SVN)
    *Plaintiff,*                          :
                                      :
v.                                   :
                                        :
LEIGHANN CARUSO, *et al.*,            :
    *Defendants.*                         :          June 22, 2026

## INITIAL REVIEW ORDER

*Pro se* plaintiff Stephen Pennyman, a sentenced[1] inmate currently incarcerated at Robinson Correctional Institution ("Robinson CI"), filed this action against twenty-one defendants under 42 U.S.C. § 1983. He brings claims under the First, Eighth, and Fourteenth Amendments. Plaintiff's complaint seeks damages and declaratory relief. Plaintiff also seeks injunctive relief through a separately filed motion for a preliminary injunction and temporary restraining order.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted

---

[1] The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). The Department of Correction (DOC") website shows that Plaintiff reported to prison on July 22, 2025, to begin serving a two-year sentence for a drug offense. Plaintiff is currently serving that sentence at Robinson CI. He has a maximum release date of November 29, 2026. Plaintiff's period of special parole ends on July 17, 2027. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=342674 (last visited June 22, 2026).

an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders

that all of Plaintiff's claims must be dismissed.  Because the complaint fails to state a claim upon

which relief can be granted, the Court also denies Plaintiff's motion for a preliminary injunction

and temporary restraining order, ECF No. 16.  The Court further finds that Plaintiff's motion to

amend the complaint to remove the names of several defendants, ECF No. 17, is moot.

## I.     INITIAL REVIEW OF COMPLAINT

### A.  Factual Background

The Court does not include herein all the allegations from the complaint but summarizes

only those facts necessary to provide context for initial review.  Because some of the allegations

in the complaint are undated, not listed in chronological order when dated, repetitious, or otherwise

unclear, the Court supplements those allegations, where necessary, with information available

from publicly accessible government records in an attempt to construct a chronological summary

of facts.

According to court records on the State of Connecticut Judicial Branch's website, Plaintiff

was convicted of Attempt to Commit Robbery, First Degree, in 2018.[3]  The state court sentenced

Plaintiff to 78 months' imprisonment and four years' special parole for that offense on November

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[3] *See* State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Convictions Search By Defendant*, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (search "Pennyman," "S," docket number NNH-CR17-0294365-T) (last visited June 22, 2026).  The Court may take judicial notice of this information.  *See Cuadrado v. Naugatuck Police*, No. 3:22-CV-00969 (SRU), 2023 WL 4133712, at *2 (D. Conn. June 22, 2023) (noting that the Court may "take judicial notice of the information on the State of Connecticut Judicial Branch website[.]").

5, 2018.  *See supra* note 3.  Plaintiff was released from prison to begin his term of special parole on July 18, 2023.  *See Pennyman v. Desena*, 3:25-CV-00040-SVN ("*Desena*"), Compl., ECF No. 1 ¶ 1.[4]  Plaintiff is currently serving a sentence of two years and zero days in relation to a conviction for possession with intent to sell or dispense narcotics.[5]  He was serving his special parole term relating to the prior conviction when he was arrested for this offense.

Plaintiff maintains in his complaint that parole officers Jennifer Desena, Micah Mann, Leigh-Anne Caruso,[6] and Frank Spinelli searched Plaintiff's home on November 2, 2023 "based on fabricated allegations" that Plaintiff possessed a gun.  Compl., ECF No. 1 at 9.  Parole officers did not locate a gun, but they located drugs in Plaintiff's home during the search.  *Id.*  Plaintiff was arrested for possessing those drugs.  *Id.*  Plaintiff was then charged in state court with Possession with Intent to Sell or Dispense Narcotics.[7]

Plaintiff appeared at a parole revocation hearing on May 17, 2024.  ECF No. 1 at 9.  There, Plaintiff received a six-month sentence and was reinstated on special parole.  *Id.* at 10.  Plaintiff thereafter posted bond in the pending drug case.  *See id.*  While on bond, Plaintiff filed his civil suit in *Desena* on January 8, 2025.  *See Desena*, Compl., ECF No. 1 at 1 (showing complaint filed January 8, 2025).  The suit alleged that the parole officers who searched Plaintiff's home on November 2, 2023, violated Plaintiff's constitutional rights.  *See generally id.*

Allegedly after Plaintiff filed his civil suit in *Desena*, Parole Officer Caruso "falsely

---

[4] The Court may take judicial notice of the record in other cases in this district.  *See Barletta v. Quiros*, No. 3:22-CV-01110 (SALM), 2023 WL 2687285, at *2 (D. Conn. Mar. 29, 2023) (citing *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498–99 (2d Cir. 2014)) ("The Court may take judicial notice of its own records[.]").

[5] *See* State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Convictions Search By Defendant*, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (search "Pennyman," "S," docket number N07M-CR23-0354983-S) (last visited June 22, 2026).

[6] Defendant Caruso is currently listed on the docket as "Leighann Caurso."  But her waiver of service filed in *Desena* spells her name as "Leigh-Anne Caruso."  *See Desena*, ECF No. 40.

[7] *See* State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Convictions Search By Defendant*, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (search "Pennyman," "S," docket number N07M-CR23-0354983-S) (last visited June 22, 2026).

documented" that Plaintiff "violated a court-ordered program." ECF No. 1 at 13. Officer Caruso then "ordered" Plaintiff to be placed on a GPS monitoring device for failing to participate in a court-ordered drug program. *See id.* at 13–14. Plaintiff's attorney indicated, however, that Plaintiff was not ordered to participate in a court-ordered drug program. *Id.* at 13. Despite this, Parole Officer Perez, who was assigned to supervise Plaintiff after he filed his suit against Caruso in *Desena*, told Plaintiff that she could not remove the GPS device without a meeting between Plaintiff and Officer Perez's supervisor, Parole Officer Parsons. *Id.* at 13–14. Officer Parsons told Plaintiff that he would remain on the GPS device because Officer Parsons' records indicated that Plaintiff had not completed a prerequisite drug evaluation, even though Plaintiff maintained he had done so. *See id.* at 14. Officer Parsons later told Plaintiff to stop complaining about his GPS device "because it could get a lot worse . . . " *Id.* at 20. Officer Parsons told Plaintiff that he "should have known that a lawsuit won[']t help" him, and that parole officers "c[ould] do what [they] want[ed] and [Plaintiff] has to do it." *Id.*

Officer Pettinato, who was assigned to supervise Plaintiff after Officer Perez, subsequently told Plaintiff that she would not remove the GPS device because Plaintiff "had a 2010 burglary charge." *Id.* at 20–21. Officer Pettinato told Plaintiff to "keep his head down because he should have never filed the lawsuit or complained at all because everyone (parole officers and parole supervisor) are all friends and work together . . ." *Id.* at 21. Officer Pettinato also told Plaintiff that "anyone who pushes will get pushed back[,] so stop complaining and drop the lawsuit and everything will be good because [Plaintiff] cannot win . . ." and that that "when [P]laintiff goes to jail[,] he won[']t get out early[,] if not lat[]er than [he is] s[up]posed to get out . . ." *Id.*

Plaintiff was convicted of the drug offense and reported to DOC to begin serving his two-year prison sentence on July 22, 2025. *See supra* note 1; ECF No. 1 at 10. Once Plaintiff entered

DOC to serve his sentence, DOC "falsely classified" Plaintiff as being held on a "new" special parole violation even though he was being held for a criminal drug conviction. ECF No. 1 at 10. DOC also "wrongfully classifie[d]" Plaintiff "as a[n] 85% violent offender" despite his drug conviction making him a "50%" offender. *Id.* at 12. This classification delayed Plaintiff's "transitional supervision" date, "program entry," and "community release eligibility." *Id.* In addition to "reclassifying" Plaintiff as a "violent offender," prison officials also delayed jail credits and denied transitional supervision with "false information." *Id.*

While Plaintiff was in prison, his wife called Parole Supervisor Ruth Muniz about Plaintiff's "false special parole violation status." *Id.* at 15. Supervisor Muniz told Plaintiff's wife that Plaintiff did not have a parole violation. *Id.* Plaintiff's wife then sent a text message to Officer Pettinato about the allegedly false special parole violation, and Pettinato responded that "it [wa]s handled." *Id.* Despite Plaintiff's wife sending multiple text messages and making multiple calls, and despite Plaintiff sending multiple inmate requests, the special parole violation status remained. *Id.* at 15–17, 19. As a result, Plaintiff remained in "85% status, not 50%" status. *Id.* at 15.

Supervisor Muniz, however, responded to one of Plaintiff's inmate requests on October 2, 2025. *Id.* at 18 (citing Ex. D-2). The response stated:

> You do not have a parole eligibility date with our a[ ]gency as you are not serving a new sentence greater than 2 years. The 85% was from your prior sentence[.] [That sentence] ended when you [d]ischarged to special parole. Any questions regarding community release or transitional supervision need to be addressed with your Community Release counselor liaison. Your 85% timesheet is corrected [and] reflects 50%.

Ex. D-2, ECF No. 1-1 at 54 (second bracketed material added for clarification). A corrected timesheet from October 14, 2025, "show[ed] [a] 50% date[,] not [an] 85%" date. ECF No. 1 at 18; *see also* Ex. D-8, ECF No. 1-1 at 62 (corrected time sheet).

On October 6, 2025, Plaintiff filed his transitional supervision packet. *Id.* at 23. Community Release Director Steve Lanphear denied Plaintiff's request for transitional supervision because of "poor performance on community release/parole/probation" and the "nature/circumstance of the current offense based on [the] false gun allegation and prior charge[s]." *Id.* at 23, 28 (caps omitted); *see also* Ex. D-3, ECF No. 1-1 at 55 (community release program cover sheet showing the denial of transitional supervision). Plaintiff was given a new special parole start date of December 27, 2026, which he claims is "false" because Plaintiff "never received a special parole violation or a new special parole commitment . . ." *Id.* at 28.

B. Discussion

Plaintiff's prayer for relief contains a request for damages and declaratory relief. *See* Compl., ECF No. 1 at 35–36. The Court has reviewed each of Plaintiff's claims and determines that none should proceed to service.

### 1. Official Capacity Claims & Request for Declaratory Judgment

To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

To the extent Plaintiff seeks a declaratory judgment "that [D]efendant[s'] conduct violated the [P]laintiff's constitutional rights," ECF No. 1 at 36, "if Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Thus, dismissal of

Plaintiff's declaratory judgment request is warranted because the declaratory relief he seeks is duplicative of his other causes of action. *See id.*

### 2. Individual Capacity Claims

Plaintiff's complaint contains three causes of action. First, Plaintiff asserts a Fourteenth Amendment due process claim related to officials "fabricating violations, misclassifying him as violent, and denying [transitional supervision] with false records." ECF No. 1 at 34. Next, Plaintiff asserts an Eighth Amendment claim for "[f]alse special parole violations, wrongful 85% status, and retaliatory [transitional supervision] denial . . . " *Id.* Lastly, Plaintiff asserts a First Amendment retaliation claim related to "[r]etaliatory conduct stemm[ing] from Plaintiff's federal civil action." *Id.* at 35. The Court discusses each claim in turn.

#### a. Fourteenth Amendment Due Process Claim Relating to Denying Transitional Supervision

First, the Court concludes that Plaintiff's Fourteenth Amendment due process claim based on fabrication, misclassification, and denying his transfer to transitional supervision must be dismissed.

[T]he Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Plaintiff alleges that Defendants "deprived [him] of liberty interests by fabricating violations, misclassifying him as violent, and denying [transitional supervision] with false records," ECF No. 1 at 34. Courts generally analyze these types of allegations through the lens of procedural due process. *See Victory v. Pataki*, 814 F.3d 47, 64–65 (2d Cir. 2016) (claim that parole officers used fabricated evidence at parole violation hearing); *Campbell v. Maldanado*, No. 3:19-CV-1430 (SRU), 2020 WL 2558228, at *6 (D. Conn. May 19, 2020) (claim relating to classification decisions); *Wirth v. Menifee*, No. 97-CIV-8862 (DLC), 1998 WL 106136, at *6 (S.D.N.Y. Mar. 10, 1998) (claim relating to early

release proceedings). An interference with a plaintiff's protected right can also be considered a substantive due process violation if it is "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012).

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). A procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (*per curiam*). Likewise, for a substantive due process claim, the first step is to "identify the constitutional right at stake." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).

Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies[.]" *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). States "may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). For prisoners, such liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted).

The Court understands Plaintiff's complaint to allege that parole officers and prison officials violated Plaintiff's right to procedural due process by taking actions—"fabricating violations, misclassifying him as violent," and relying on "false records"—that ultimately led to

Director Lanphear denying Plaintiff's request to be released on transitional supervision. ECF No. 1 at 34. Thus, for any procedural due process violation to have occurred, Plaintiff must have a liberty interest in being released on transitional supervision.[8] *See Johnson v. King*, No. 3:18-CV-1475 (SRU), 2018 WL 4516679, at *3 (D. Conn. Sept. 20, 2018) (noting that "[b]efore [plaintiff] can argue that he was denied due process in connection with his classification, [he] must have a liberty interest in avoiding classification as a [Security Risk Group] member").

It is well-settled that "[u]nder both the due-process clause and state law, an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment." *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993). And while "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence," *Swarthout*, 562 U.S. at 220, "that does not establish that state inmates lack a liberty interest in conditional release where the state has created a statutory mechanism providing for *mandatory* conditional release for eligible inmates." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (emphasis original). "It means only that an inmate has no constitutional right to demand or expect conditional release where the incarcerating authority does not offer such an opportunity under its law." *Id.* at 1087–88 (footnote omitted). Thus, any liberty interest Plaintiff may have in being released on transitional supervision depends on whether state law *requires*

---

[8] To the extent Plaintiff claims that, standing alone, his alleged misclassification as a violent offender or as an inmate being held on a special parole violation violates his Fourteenth Amendment rights, such a claim cannot go forward. Courts in this district have repeatedly held that "the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action." *Torres v. Stewart*, 263 F. Supp. 2d 463, 469 (D. Conn. 2003); *Green v. Armstrong,* No. 3:96-CV-1127(AVC) (TPS), at *10 (D. Conn. Feb. 25, 1998), *aff'd,* 189 F.3d 460 (2nd Cir. 1999) (finding there is no legally recognized liberty interest in proper classification); *see also United States v. Sanford,* No. 07-CR-401 JS, 2014 WL 2208172, at *2 (E.D.N.Y. May 28, 2014) (quoting *Collins v. Schult,* No. 08–CV–1230, 2010 WL 411055, at *4 (N.D.N.Y. Jan. 27, 2010) ("[A]bsent a showing that the challenged confinement imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' or that the BOP's action 'will inevitably affect the duration of his sentence,' prisoners . . . do not have a constitutionally protected liberty interest under the Federal Constitution in prisoner classifications in the federal prison system."); *but see Campbell*, 2020 WL 2558228, at *6.

inmates to be placed on it. *See Ashby v. Quiros*, No. 3:17-CV-916 (CSH), 2018 WL 6704744, at *8 (D. Conn. Dec. 20, 2018) (noting that "[s]tatutory or regulatory 'language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed' can create" a protected liberty interest).

Connecticut law provides that an inmate "who received a definite sentence of two years or less, and who has been confined under such sentence for not less than one-half of the sentence imposed by the court, . . . *may* be released pursuant to subsection (e) of section 18-100 or to any other community correction program approved by the Commissioner of Correction." Conn. Gen. Stat. § 18-100c (emphasis added). "[S]ubsection (e) of section 18-100," *id.*, in turn, provides that the DOC Commissioner "*may* transfer any person . . . to any public or private nonprofit halfway house, group home or mental health facility or, after satisfactory participation in a residential program, to any approved community or private residence." Conn. Gen. Stat. § 18-100(e) (emphasis added).

Connecticut law describes "transitional supervision" as a type of "release program." *See* Conn. Gen. Stat. § 18-81w(b) (providing that "[t]he success of the reentry strategy shall be measured by . . . the number of inmates eligible for release on parole, transitional supervision, probation or any other release program"). While "transitional supervision" is not further defined by statute, courts have described "transitional supervision" as "DOC's current terminology for community release." *Connelly v. Lantz*, No. CIV. 3:00-CV-720 (JCH), 2007 WL 3308013, at *6 n.12 (D. Conn. Nov. 5, 2007), *aff'd*, 366 F. App'x 194 (2d Cir. 2010). Indeed, DOC's Administrative Directives describe transitional supervision as a type of "Community Release

Program." *See* DOC Admin. Dir. 9.2(11)(1).[9]  Thus, as described by statute and DOC, transitional supervision is the type of "residential program" or "approved community or private residence" to which DOC may release an inmate under section 18-100(e).  The question, then, is whether the language of 18-100c and 18-100(e) creates a liberty interest in being placed on transitional supervision.

"Statutory . . . 'language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed' can create such a protected [liberty] interest." *Ashby*, 2018 WL 6704744, at *7 (bracketed material added for clarity) (quoting *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983)).  On the other hand, "[a] liberty interest may not arise if . . . the statute at issue 'is framed in discretionary terms.'" *Bangs v. Smith*, No. 21-CV-6475 (FPG), 2022 WL 1693308, at *8 (W.D.N.Y. May 26, 2022), *aff'd*, 84 F.4th 87 (2d Cir. 2023) (quoting *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000)).

The use of the term "may" in both sections 18-100c and 18-100(e) conveys that placement of an inmate on transitional supervision is discretionary, not mandatory.  *Biden v. Texas*, 597 U.S. 785, 802 (2022) (noting that the Supreme Court "has repeatedly observed that the word 'may' *clearly* connotes discretion.") (internal quotation marks omitted; emphasis original); *Kingdomware Technologies, Inc. v. United States,* 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.").  Because placement of an inmate on transitional supervision is discretionary under sections 18-100c and 18-100(e), it provides for only a possibility, not a guarantee, of an inmate's release before his or her

---

[9]*See* DOC, *Administrative Directive 9.2, Offender Classification*, https://portal.ct.gov/-/media/doc/pdf/ad/ad9/ad_0902_effective_07012006.pdf?rev=100ee6e75490462093306ba98f56cdd7&hash=F16818058A968AF9E3DC6120A3470355 (last visited June 22, 2026). "The Court can take judicial notice of the State of Connecticut Administrative Directives on the Department of Correction's website." *Chambers v. Johnpierre*, No. 3:14-CV-1802 (VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016).

sentence expires.  *See Yourdon v. Johnson*, No. 01-CV-0812 (ESC), 2006 WL 2811710, at \*2 (W.D.N.Y. Sept. 28, 2006) (noting that "discretionary" New York parole system "holds out no more than the possibility of parole") (internal quotation marks and citation omitted).

The Second Circuit has recognized that "[a] mere 'hope or a unilateral expectation of release' does not create a protected interest." *Cheng v. United States*, 132 F.4th 655, 659 (2d Cir. 2025) (quoting *Victory*, 814 F.3d at 59).  Instead, what is required is a "legitimate claim of entitlement to release." *Id.*  As such, courts in this district have concluded that "[a] state prisoner does not generally have a liberty interest in the possibility of release." *Campbell v. Wilkey*, No. 3:24-CV-879 (VDO), 2024 WL 3343001, at \*3 (D. Conn. July 9, 2024) (citing cases).  Courts in this district have likewise concluded that inmates "do[] not have a liberty interest in release to a community or residential placement[.]" *Miller v. Lamont*, No. 3:20-CV-872 (MPS), 2020 WL 6136300, at \*5 (D. Conn. Oct. 19, 2020) (collecting cases); *see also Luther v. Hunt*, No. 3:19-CV-744 (VAB), 2020 WL 127670, at \*4 (D. Conn. Jan. 10, 2020) (similar).

Because transitional supervision is a type of community or residential placement that is awarded at the DOC's discretion, Plaintiff has no liberty interest in being placed on transitional supervision.  *See Miller*, 2020 WL 6136300, at \*5; *Luther*, 2020 WL 127670, at \*4.  And without a liberty interest in being placed on transitional supervision, Plaintiff's procedural and substantive due process claims must be dismissed.  28 U.S.C. § 1915A(b)(1); *see also Miller*, 2020 WL 6136300, at \*5 (dismissing Fourteenth Amendment procedural due process claim alleging that prison officials "postpone[d] consideration of [plaintiff's] community release application…."); *Luther*, 2020 WL 127670, at \*4 (dismissing Fourteenth Amendment procedural due process claim alleging that prison official "did not provide [plaintiff] with an opportunity to participate in the

12

community release application process in a meaningful way and failed to consider any of the underlying circumstances relating to his particular conviction"). *See* 28 U.S.C. § 1915A(b)(1).

b. Eighth Amendment Claim Related to Wrongful Incarceration

Next, the Court holds that Plaintiff's Eighth Amendment claim (and related Fourteenth Amendment claim) based on improper incarceration past his release date must be dismissed.

Plaintiff asserts an Eighth Amendment claim for "[f]alse special parole violations, wrongful 85% status, and retaliatory [transitional supervision] denial…." ECF No. 1 at 34. The Court understands Plaintiff to allege that prison officials violated his rights under the Eighth Amendment by incarcerating him longer than required.

A claim that prison officials unlawfully held a prisoner beyond his expected release date may be cognizable as a Fourteenth Amendment due process claim or an Eighth Amendment cruel and unusual punishment claim. *See Brunson v. Duffy*, 14 F. Supp. 3d 287, 291 (S.D.N.Y. 2014) ("The Second Circuit has interpreted such a claim to fall under the Fourteenth Amendment's guarantee of due process, either as a general guarantee of a liberty interest in being set free at the end of a term of imprisonment, or as a specific guarantee of the Eighth Amendment's protection against cruel and unusual punishment as applied to the states." (cleaned up)); *see also Calhoun*, 999 F.2d at 653 (considering such a claim under the Fourteenth Amendment); *Hurd*, 984 F.3d at 1084 (considering such a claim under the Eighth Amendment). The Court first considers whether Plaintiff states a claim for violations of his Eighth Amendment rights by improperly denying transitional supervision on the basis of fabricated or nonexistent violations, or on the basis of a misclassification in "85% status" instead of "50% status," to the extent Plaintiff claims these decisions have extended Plaintiff's time in custody. *See* Conn. Gen. Stat. § 54-125a (discussed below).

13

"A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements.  First, the alleged deprivation must be, in objective terms, sufficiently serious . . . Second, the charged official must act with a sufficiently culpable state of mind."  *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019) (internal quotation marks and citations omitted).  As to the first requirement, "a plaintiff must plead 'a harm of a magnitude that violates a person's eighth amendment rights.'"  *Hurd*, 984 F.3d at 1084 (2d Cir. 2021) (quoting *Calhoun*, 999 F.2d at 654 (internal quotation marks and citation omitted)).  Relevant here, this includes "punishments that are 'totally without penological justification.'"  *Id.* at 1085 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

As to the second requirement, "an Eighth Amendment violation typically requires a state of mind that is the equivalent of criminal recklessness."  *Francis*, 942 F.3d at 150 (internal quotation marks and citation omitted).  "This standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability."  *Id.* (cleaned up).  "Under this standard, prison officials can be found deliberately indifferent to their own clerical errors on the basis of their refusals to investigate well-founded complaints regarding these errors."  *Hurd*, 984 F.3d at 1084–85 (internal quotation marks omitted) (quoting *Francis*, 942 F.3d at 150).  But "[i]f a period of prolonged detention results from discretionary decisions made in good faith, mistake, or processing or other administrative delays, as opposed to the deliberate indifference of prison officials, then there is no Eighth Amendment liability."  *Id.* at 1086.

The Court first considers whether Plaintiff's complaint describes "a harm of a magnitude that violates [his] eighth amendment rights," in satisfaction of the first requirement.  *Id.* at 1084 (internal quotation marks and citation omitted).  It does not.

As previously discussed, under Connecticut state law, an inmate with a sentence of two years or less "may be released" pursuant to a community correction program approved by the Commissioner of Correction. *Id.* § 18-100c. Similarly, most inmates "who received a definite sentence or total effective sentence of more than two years, and who ha[ve] been confined under such sentence or sentences for not less than one-half of the total effective sentence . . . may be allowed to go at large on parole . . . " Conn. Gen. Stat. § 54-125a(a). But an inmate serving a sentence of longer than two years who has been convicted of certain violent offenses "shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed." *Id.* § 54-125a(b). Plaintiff challenges his alleged misclassification as an offender with a sentence governed by § 54-125a(b), rather than § 18-100c.

To the extent Plaintiff asserts denial of transitional supervision on the basis of a misclassification or falsified parole violation violates the Eighth Amendment because it has unfairly prolonged his sentence, such harm does not satisfy the first prong. First, Plaintiff has not pleaded that he has been detained past his mandatory release date. It is true that the Second Circuit has observed that "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis." *Hurd*, 984 F.3d at 1085 (footnote omitted). This is the case because "[t]here is no penological justification for incarceration beyond a mandatory release date because any deterrent and retributive purposes served by the inmate's time in jail were fulfilled as of that date." *Id.* (cleaned up). But even after prison officials adjusted Plaintiff's section 54-125a status in October of 2025, *see* Ex. D-2, ECF No. 1-1 at 54; Ex. D-8, ECF No. 1-1 at 62, Plaintiff's mandatory release date will not come until November 29, 2026. *See supra* note 1. If Plaintiff believes this mandatory

15

release date is incorrect, because of clerical errors or otherwise, he has not claimed as much.  And because he has not, at this juncture, been held past his mandatory release date, he cannot presently state an Eighth Amendment claim.

Second, Plaintiff's allegations that he was denied an opportunity to be released into a community correction program, even if such denials *were* based on a misclassification or a nonexistent parole violation, also do not meet the threshold.   Inmates have "no constitutional right to be released on parole or to other conditional release from prison" prior to the expiration of a valid sentence.  *Fonck v. Semple*, No. 3:18-CV-1283 (KAD), 2018 WL 4654700, at *5 (D. Conn. Sept. 27, 2018).  Thus, denial of transitional release is not an Eighth Amendment violation.  *Id.*; *Wright v. Malloy*, 2016 WL 7115933, at *6 (D. Conn. Dec. 6, 2016).

Accordingly, prison officials' "wrongful[] classifi[cation]," *id.*, was not "a harm of a magnitude that violate[d] [Plaintiff's] eighth amendment rights."  *Hurd*, 984 F.3d at 1084 (internal quotation marks and citation omitted).  Consequently, Plaintiff's Eighth Amendment claim must be dismissed.  28 U.S.C. 1915A(b)(1); *see also D'Angelo v. Annucci*, No. 16-CV-6459 (KMK), 2017 WL 6514692, at *10 (S.D.N.Y. Dec. 19, 2017) (concluding that "[e]ven if the [c]ourt were to find that [p]laintiff had met the deliberate indifference requirement, the [c]omplaint would still fail to plausibly state an Eighth Amendment claim given that [p]laintiff was not held beyond his *maximum* sentence." (emphasis original) (citing, *inter alia*, *Calhoun*, 999 F.2d at 654)).

Likewise, as Plaintiff has not been held past his mandatory release date, the allegations that underlie his Eighth Amendment claim cannot support a Fourteenth Amendment due process claim. *See Calhoun*, 999 F.2d at 653.  *See* 28 U.S.C. § 1915A(b)(1).

c. First Amendment Retaliation Claim

Lastly, Plaintiff asserts a First Amendment retaliation claim related to "retaliatory conduct stemm[ing] from Plaintiff's federal civil action." ECF No. 1 at 35. Plaintiff does not specify what this alleged retaliatory conduct is, or how it is connected to his filing of *Desena*. The Court construes the complaint to assert that, after Plaintiff filed his civil suit in *Desena*, Parole Officer Caruso "falsely documented" that Plaintiff "violated a court-ordered program." ECF No. 1 at 13. Officer Caruso then "ordered" Plaintiff to be placed on a GPS monitoring device for failing to participate in a court-ordered drug program. *See id.* at 13–14.

To state a First Amendment retaliation claim under section 1983, a plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted)). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id*. at 295 (internal quotation marks and citation omitted).

As to the first requirement, Plaintiff's federal lawsuit against parole officers in *Desena* constitutes protected speech. *See Jusino v. Wolf-Craig*, No. 3:23-CV-1014 (SRU), 2024 WL 1576606, at *3 (D. Conn. Apr. 11, 2024) (noting that "[f]iling a lawsuit or grievance is protected activity that satisfies the first element" of a First Amendment retaliation claim).

17

The Court assumes, without deciding, that Plaintiff has satisfied the second element of adverse action. An "adverse action" is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks and citation omitted). The Court construes the complaint as alleging that Defendant Caruso, who is also a defendant in *Desena*, "falsely documented" that Plaintiff violated a court-ordered condition that a court did not in fact order. *See* ECF No. 1 at 13. As a result of violating that disputed court-ordered condition, Caruso "ordered" Plaintiff to be placed on a GPS device. *See id.* The Second Circuit has recognized that filing a "false report," like Caruso's "false[] document[ation]" related to Plaintiff's alleged violation of a court-ordered condition, ECF No. 1 at 13, constitutes an adverse action, particularly when it results in a restraint on liberty. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (concluding that "the filing of false misbehavior reports" that resulted in the plaintiff's placement in "three weeks in keeplock" constituted adverse action); *Kotler v. Boley*, No. 21-1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (summary order) (concluding that cell search, "false report," and false testimony at a hearing were considered adverse actions). Accordingly, the Court assumes Plaintiff's allegations related to Caruso's filing of "false[] document[ation]," ECF No. 1 at 13, satisfy the second requirement.

As to the third requirement, however, Plaintiff's complaint fails. "[A] plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* (emphasis original). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the

plaintiff would not have been taken absent the retaliatory motive." *Id.* at 398–99 (citing *Hartman*, 547 U.S. at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

"Factors the court may consider when determining whether a causal connection exists include temporal proximity between the protected activity and the alleged retaliatory act and statements made by the defendant concerning his motives." *Patterson v. Lichtenstein*, No. 3:18-CV-2130 (MPS), 2019 WL 1596347, at *4 (D. Conn. Apr. 15, 2019) (citing *Espinal*, 558 F.3d at 129 (temporal proximity); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (alleged admission of retaliatory conduct)). Temporal proximity between the adverse action and the protected activity may be sufficient on its own to establish a causal connection. *See Espinal*, 558 F.3d at 129 (concluding that six-month period between dismissal of a lawsuit and alleged retaliatory beating was sufficient to infer causal connection).

Here, to the extent Plaintiff is claiming that Caruso took an adverse action of making a false report about his compliance with his conditions of parole and imposing a GPS monitoring condition *after* he filed the *Desena* lawsuit, examination of the *Desena* complaint does not support a plausible allegation of causation here. Within the *Desena* lawsuit, Plaintiff alleged that Caruso had unlawfully placed him on GPS monitoring. *See Pennyman v. Desena*, No. 3:25-CV-40 (SVN), 2026 WL 892276, at *2 (D. Conn. Mar. 31, 2026) (describing Plaintiff's complaint as alleging that, after he served a sentence for a parole revocation, "Defendant Caruso . . . unlawfully placed him on GPS monitoring, in addition to his other conditions of special parole"). Indeed, the Court allowed that claim against Caruso to proceed in the *Desena* suit. *Id.* at *8. Thus, it is clear Caruso's actions of placing Plaintiff on GPS monitoring due to an alleged false report occurred *before*

19

Plaintiff filed the *Desena* lawsuit; otherwise, Plaintiff would not have been able to include these allegations in his complaint in *Desena*. And if Caruso's actions occurred before the filing of *Desena*, they could not possibly have been taken in retaliation for the filing of the *Desena* suit, as Plaintiff alleges here. Thus, absent allegations of new conduct engaged in by Caruso after the filing of *Desena*, Plaintiff cannot demonstrate the causation element of his First Amendment retaliation claim.

Plaintiff's retaliation claim also may not proceed against any other Defendant. Beyond Officer Caruso, Plaintiff alleges Officers Pettitano and Parson, who were not named as defendants in *Desena* but nonetheless demonstrated their awareness of the suit by their statements to Plaintiff, retaliated by improperly keeping Plaintiff on the GPS device until his state drug case concluded. *See* ECF No. 1 at 14, 20–21; *Desena*, Compl., ECF No. 1 ¶¶ 2–6 (list of defendants). Plaintiff also asserts conclusory allegations that, while imprisoned, prison officials "retaliator[ily]" denied Plaintiff's request for transitional supervision, delayed jail credits, and reclassified Plaintiff as a violent offender. *See* ECF No. 1 at 12, 34.

Even if the actions of Officer Pettitano, Officer Parson, or prison officials could be considered "adverse," Plaintiff has failed to allege facts suggesting that Plaintiff's lawsuit in *Desena* was a but-for cause of their adverse actions. But-for causation "mean[s] that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. But Plaintiff alleges that Officer Parsons refused to remove the GPS device not as retaliation, but because her computer did not show that Plaintiff had completed a drug evaluation. *See* Compl., ECF No. 1 at 14. Similarly, Plaintiff alleges that Officer Pettitano would not remove the GPS device because Plaintiff "had a 2010 burglary charge." *Id.* at 21. While Plaintiff alleges

20

that Officer Parsons said Plaintiff "should have known that a law suit won[']t help," *id.* at 20, that is insufficient to infer any retaliatory intent.

Assuming the truth of these allegations, as the Court must on initial review, *see Williams v. Rodriguez*, No. 3:20-CV-806 (VLB), 2021 WL 11592313, at *2 (D. Conn. Apr. 28, 2021), Officers Pettitano and Parsons had reasons to keep Plaintiff on a GPS monitoring device independent of any retaliatory motive—especially when GPS devices are commonly used to monitor individuals who, like Plaintiff, were on special parole and pretrial release for a felony offense. *See United States v. Wiley*, 103 F.4th 565, 584 (9th Cir. 2024) (Mendoza, J., concurring) (noting that "[e]lectronic monitoring has become an increasingly common aspect of pretrial supervision, both in the state and federal systems"). Because, as alleged by Plaintiff, Pettitano and Parsons would have kept Plaintiff on the GPS device "absent [a] retaliatory motive," *Nieves*, 587 U.S. at 399, Plaintiff's First Amendment retaliation claim against these defendants must be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Plaintiff's First Amendment claim must also be dismissed against any prison official, but for other reasons. "[T]he Second Circuit as well as other district courts within the Circuit have observed that it is difficult to establish one defendant's retaliation for complaints against another defendant." *Dixon v. Lupis,* No. 3:20-CV-1754 (VLB), 2021 WL 4391246, at *9 (D. Conn. Sept. 24, 2021) (cleaned up; collecting cases). Plaintiff does not allege facts suggesting that any prison official knew of the existence of *Desena,* which named only parole officers as defendants. *See Desena*, Compl., ECF No. 1 ¶¶ 2–6.

Without establishing prison officials' knowledge of Plaintiff's suit in *Desena*, Plaintiff cannot show that any "adverse action against [him] would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399; *see also Jordan v. Dep't of Corr*., No. 3:24-CV-236

(VAB), 2025 WL 1835955, at *8 (D. Conn. July 3, 2025) (dismissing First Amendment retaliation claim because plaintiff "failed to allege any non-conclusory facts showing that other staff even knew about the grievance filed against [other officers], let alone retaliated against [plaintiff] in response to it" (bracketed material substituted)).    Accordingly, Plaintiff's First Amendment retaliation claim against the prison officials must be dismissed.  28 U.S.C. § 1915A(b)(1).

For reasons stated above, all of Plaintiff's claims are dismissed.  As discussed below, the Court will permit Plaintiff to amend his complaint with respect to his First Amendment retaliation claim, however.

## II.    MOTION FOR PRELIMARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Plaintiff has also filed a motion seeking a temporary restraining order and preliminary injunctive relief.  Mot., ECF No. 16.  The motion asks the Court to (1) "[d]eclare that the reliance on false or inaccurate information violated Plaintiff's constitutional rights," (2) "order correction of [P]laintiff's sentence classification to reflect the proper 50% eligibility statute"; (3) "order [DOC] to remove the false special parole violation from Plaintiff's institutional record"; (4) "order immediate reconsideration for [t]ransitional [s]upervision without reliance on false or outdated information"; and (5) "order Plaintiff's release to Transitional Supervision for the remainder of his sentence."  *Id.* at 12–13.

To obtain preliminary injunctive relief in the form of a preliminary injunction or temporary restraining order, "the defendants must be capable of providing the relief sought by the plaintiff." *Gulley v. Ogondo*, No. 3:18-CV-858 (SRU), 2020 WL 1863276, at *2 (D. Conn. Apr. 13, 2020) (citing *Wells v. Jacobs*, No. 02-CV-0633S(F), 2004 WL 1146028, at *2 (W.D.N.Y. Mar. 22, 2004) (denying motion for temporary restraining order and preliminary injunction because none of the

defendants could provide the plaintiff with the requested relief)); *see also Loren v. Levy*, No. 00 CIV. 7687 (DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003), *aff'd*, 120 F. App'x 393 (2d Cir. 2005) (noting that "[a]n injunction may issue only in circumstances where the state official has the authority to perform the required act." (internal quotation marks and citation omitted); *Cosby v. Tawana*, No. 3:19-CV-401 (MPS), 2019 WL 5298144, at *1 (D. Conn. Oct. 18, 2019) ("The same standard is used to evaluate requests for temporary restraining order and preliminary injunction.").

The Court has dismissed Plaintiff's complaint in its entirety. Thus, there is no basis for granting Plaintiff's motion for preliminary injunctive relief. Additionally, even if the complaint had survived and Plaintiff were to show he was entitled to preliminary injunctive relief, the named Defendants do not appear to have the authority to correct Plaintiff's sentence classification, modify his DOC record, reconsider DOC's transitional supervision decision, or release Plaintiff to transitional supervision. *See* Mot., ECF No. 16 at 12–13; *see also Gulley*, 2020 WL 1863276, at *2 (concluding that defendants, correctional staff and nurses, "would not have the authority to release [plaintiff] from prison even if [the court] … direct[ed] them to do so."). For these reasons, Plaintiff's motion for preliminary injunctive relief and a temporary restraining order must be denied. *See id.*

## III.    MOTION FOR LEAVE TO AMEND

Finally, the Court addresses Plaintiff's pending motion for leave to amend, in which he seeks to "remove" Defendants Desena, Mann, Spinelli, and Harris from the action. ECF No. 17 at 1. Plaintiff represents that these Defendants are not sufficiently involved in the alleged constitutional violations giving rise to this lawsuit. *Id.* The Court finds that this motion is moot.

23

A plaintiff may amend his complaint once, as a matter of course, within 21 days after serving it, or within 21 days after the service of a responsive pleading or a motion to dismiss under Fed. R. Civ. P. 12(b), (e), or (f).  Fed. R. Civ P. 15(a)(1).  Because the complaint in this matter has not been served, Plaintiff may amend as a matter of right, and need not request leave to amend.  As described above, however, none of the allegations in Plaintiff's complaint survive initial review.  Accordingly, Plaintiff's requested amendment is moot.

Because it is possible that Plaintiff's First Amendment allegations against Defendant Caruso may be cured by better pleading (to the extent that Caruso's actions were retaliation for something other than the filing of the *Desena* lawsuit), Plaintiff will be permitted to amend his complaint with respect to his First Amendment retaliation claim against Defendant Caruso only, in accordance with the Order described below.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

IV.    **CONCLUSION AND ORDERS**

Based on the foregoing, the Court issues the following orders:

The Court **DISMISSES** all claims.  Plaintiff may file an amended complaint to attempt to rectify the deficiencies identified by the Court with respect to his First Amendment retaliation claim against Defendant Caruso **only** by **July 22, 2026.**  If he chooses to file an amended complaint, Plaintiff is encouraged to recite his factual allegations as clearly as possible.  **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff fails to file an amended complaint by **July 22, 2026**, the case will be closed.

As to his Fourteenth and Eighth Amendment claims, the complaint is dismissed at the present time, but Plaintiff may refile another suit should he actually be held beyond the date he believes is his correct maximum release date. Plaintiff is not permitted to raise his Fourteenth and Eighth Amendment claims in any amended complaint in this action, however, because doing so would be futile. *See Cuoco*, 22 F.3d at 112.

Plaintiff's motion for a preliminary injunction and temporary restraining order, ECF No. 16, is **DENIED**. Likewise, Plaintiff's motion for leave to amend, ECF No. 17, is **DENIED** as moot**.**

The Clerk of Court is respectfully directed to change the spelling of Defendant "Leighann Caurso" to "Leigh-Anne Caruso" on the docket.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.

**SO ORDERED** at Hartford, Connecticut, this 22nd day of June, 2026.

       /s/ Sarala V. Nagala
       SARALA V. NAGALA
       UNITED STATES DISTRICT JUDGE

25